IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

——————————————————————————

ALAN MUSCH,

                    Plaintiff,

                                      MEMORANDUM AND ORDER

     v.                                 07-cv-524-jcs

DOMTAR INDUSTRIES, INC.,

                    Defendant.

——————————————————————————

Named plaintiff Alan Musch ("Musch") commenced this action against Domtar Industries, Inc. ("Domtar") alleging that defendant violated both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 and Wisconsin Minimum Wage Laws ("WMWL"), Wisconsin Statute § 103.01 and Wisconsin Administrative Code DWD §§ 274.01-.08.  To date an additional forty-nine[1] current and former employees of defendant have opted into the lawsuit as unnamed plaintiffs (collectively "opt-in plaintiffs").  Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1367.  The matter is currently before the Court on named plaintiff's motion requesting certification of a collective action under the FLSA and class certification under Federal Rule of Civil Procedure 23 as well as court authorization of notice to potential plaintiffs.  The following facts are based

---

[1]Although fifty-two consent forms have been filed with the Court, three opt-in plaintiffs filed two forms.  Those three opt-in plaintiffs are, Gerald Murphy, Jerry Reyes and Jerome Stelzer.

on plaintiff's allegations and affidavits and are pertinent to the pending motion.

BACKGROUND

Named plaintiff and opt-in plaintiffs (collectively "plaintiffs") are current or former hourly paid "maintenance" employees of defendant Domtar who at any time within the last three years worked for defendant at its paper mill facilities in Nekoosa and/or Port Edwards, Wisconsin (collectively "paper mills"). Domtar is a company that designs, manufactures, markets and distributes a wide range of fine paper for a variety of consumers. Domtar is the largest producer of uncoated freesheet papers in North America as well as one of the leading manufacturers of pulp in North America.

Domtar employs hundreds of hourly paid "maintenance" employees at its paper mills to help facilitate its large scale paper production operations. It is the duty of "maintenance" employees to perform maintenance work on Domtar's machinery at its paper mills to ensure that the production process does not break down and/or stop and that the processing machinery remains in proper working order throughout the workday. "Maintenance" employees' duties are hazardous in nature, for example they are exposed to hazardous chemicals on a daily basis.

Due to the hazardous nature of "maintenance" employees' jobs they are required to wear personal protective equipment, such as

2

specific work clothes, safety shoes and safety glasses, while at the workplace. "Maintenance" employees are required to don their personal protective equipment prior to the start of the workday and doff such personal protective equipment at the end of the workday. "Maintenance" employees are also required to shave before the workday begins and shower and/or bathe at the end of each workday prior to leaving the workplace. Domtar allegedly has a pay policy and practice of not considering as compensable work time the time "maintenance" employees spend donning and doffing personal protective equipment and cleaning and sanitizing themselves.

Plaintiffs allege that the time spent donning and doffing personal protective equipments as well as cleaning and sanitizing themselves is compensable work time. Plaintiffs further allege that defendant's pay policy and practice of not paying plaintiffs for such work time violates the FLSA and WMWL. Named plaintiff requests that his FLSA claims be certified as a collective action under 29 U.S.C. § 216(b) because he is similarly situated to other current or former hourly paid "maintenance" employees of defendant who at any time within the last three years worked for defendant at its paper mill facilities in Nekoosa and/or Port Edwards, Wisconsin. Named plaintiff also requests that his state law claims brought under WMWL be certified as a class action under Federal Rule of Civil Procedure 23.

MEMORANDUM

## I.   FLSA collective action certification

Under 29 U.S.C. § 216(b) an employee may bring an FLSA claim "in behalf of himself . . . and other employees similarly situated." However, collective actions under the FLSA differ from ordinary class actions brought under Federal Rule of Civil Procedure 23 because if similarly situated employees do not "opt-in" to the FLSA action then they are not bound by the judgment. See King v. Gen. Elec. Co., 960 F.2d 617, 621 (7th Cir. 1992) (discussing the application of the FLSA's enforcement provisions under 29 U.S.C. § 216 as incorporated into the Age Discrimination and Employment Act). To "opt-in" a similarly situated employee must sign a written consent form and the form must be filed with the court. 29 U.S.C. § 216(b). Furthermore, the FLSA collective action "opt-in" procedure preempts the ordinary class action procedure under Rule 23. See id.

Before a court authorizes the sending of notice to potential plaintiffs in an FLSA action it must determine whether the named plaintiff has demonstrated that it is "similarly situated" to other potential plaintiffs. Austin v. Cuna Mut. Ins. Soc'y, 232 F.R.D. 601, 605 (W.D. Wis. 2006). The text of the FLSA, the Supreme Court and the Seventh Circuit do not provide a method for determining whether potential plaintiffs are similarly situated to named plaintiffs. Id. However, many other federal courts, including the

4

Western District of Wisconsin, have followed a two-step approach. Id. (citations omitted).

The first step requires the named plaintiffs to demonstrate a reasonable basis for believing that they are similarly situated to potential plaintiffs. Id. This step requires only a modest factual showing by named plaintiffs that can connect them "to other potential plaintiffs as victims of an unlawful practice." Id. at 605-06 (citation omitted). Once this showing is made a court conditionally certifies the collective action, authorizes notice and the parties conduct discovery. Id.

The second step takes place at the end of discovery when the defendant is permitted to file a motion for decertification. Id. If the court finds that any of the "opt-in" plaintiffs are not similarly situated to the originally named plaintiffs then it is free to dismiss the "opt-in" plaintiffs without prejudice. Id. Otherwise, the case proceeds to trial as a collective action. Id.

In this case, defendant does not dispute that named plaintiff has satisfied the first step by making a modest factual showing that he is similarly situated to other hourly paid "maintenance" employees working at defendant's paper mills. Furthermore, the affidavits and pleadings presented by named plaintiff and opt-in plaintiffs provide a reasonable basis to support that they are similarly situated to potential plaintiffs (i.e., to other hourly paid "maintenance" employees of defendant who at any time within

5

the last three years worked for defendant at its paper mill facilities in Nekoosa and/or Port Edwards, Wisconsin) as victims of defendant's allegedly unlawful pay policy and practices. Accordingly, the Court conditionally certifies named plaintiff's FLSA claims as a collective action.

## II. Rule 23 class certification

Named plaintiff also requests class certification of his WMWL claims under Federal Rule of Civil Procedure 23. The parties stipulate to class certification of a Rule 23 class that is defined as:

> All current and former Domtar hourly paid "maintenance" employees who worked in Domtar's Nekoosa and/or Port Edwards, Wisconsin mills since September 19, 2005, and were not paid for time spent shaving as required by Domtar, for time spent donning their work clothes, safety shoes, and safety glasses before the start of work each day, and for time spent doffing their work clothes, safety shoes, and safety glasses and showering at the end of each work day.

However, stipulation to Rule 23 class certification by the parties does not require the Court to certify the action. The Court is required to conduct its own "rigorous analysis" to determine whether the requirements under Rule 23 are satisfied. Davis v. Hutchins, 321 F.3d 641, 649 (7th Cir. 2003). Furthermore, the Court must conduct this "rigorous analysis" to "protect[] absent class members whose rights may be affected by the class certification." Id. Accordingly, in an effort to assure adequate protection for absent potential class members the Court must

undertake an independent analysis to determine whether plaintiff's action satisfies all Rule 23 requirements.

Under Federal Rule of Civil Procedure 23 district courts maintain broad discretion in determining whether certification of a class-action lawsuit is appropriate. Keele v. Wexler, 149 F.3d 589, 592 (7th Cir. 1998) (citation omitted). "[P]lantiff has the burden of proving that a case is appropriately a class action and meets all the requirements of Rule 23." Valentino v. Howlett, 528 F.2d 975, 978 (7th Cir. 1976) (citation omitted). Furthermore, the Court is not required to accept all the allegations in the complaint as true, but instead must exercise judgment and sound discretion in addressing the factual and legal inquiries that become necessary under the requirements of Rule 23 even if that requires a preliminary inquiry into the merits of the case. Szabo v. Bridgeport Mach., Inc., 249 F.3d 672, 675-76 (7th Cir. 2001).

Before addressing the express requirements under Rule 23 courts have addressed two implicit ones. Blihovde v. St. Croix, 219 F.R.D. 607, 614 (W.D. Wis. 2003). First, the proposed class definition must be definite, i.e., ascertainable, precise and objective. Id. (citation omitted); see also Alliance To End Repression v. Rochford, 565 F.2d 975, 977-78 (7th Cir. 1977). Second, named plaintiffs "must be members of the class they propose to represent." Bilhovde, at 614. (citation omitted). The express

requirements under Rule 23 begin with the four listed under Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Next, the party requesting certification must satisfy one of the requirements under Rule 23(b).  Pertinent to this case is Rule 23(b)(3), which requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  If the party seeking class certification, in this case plaintiff, fails to satisfy any requirement under Rule 23 then the Court will not grant class certification.

## 1.   Implicit requirements

The parties have stipulated to a class definition, stated _supra_, that is ascertainable, precise and objective.  The class is limited to hourly paid "maintenance" employees who since September 19, 2005 have worked at either of the two specifically named paper mills owned by defendant.  Also, the class members must not have been paid for a specific list of activities (e.g., donning work clothes).  Furthermore, the affidavit provided by named plaintiff

8

(i.e., Musch) demonstrates that he is part of the defined class that he wishes to represent.   Accordingly, the two implicit requirements for class certification are satisfied.

### 2.   Rule 23(a) Requirements

#### a.   Numerosity

Although to satisfy the numerosity requirement under Rule 23(a)(1) plaintiff is not required to provide the exact number of persons in his proposed class, he may not rely on mere conclusory allegations concerning the impracticality of joinder or mere speculation concerning the size of the class.  Marcial v. Coronet Ins. Co., 880 F.2d 954, 957 (7th Cir. 1989) (citations omitted). Named plaintiff alleges that there are hundreds of potential class members based on defendant having employed hundreds of hourly paid "maintenance" workers since September 19, 2005.  Although named plaintiff fails to provide an exact number, to date forty-nine other potential class members have already opted into the FLSA portion of this case.  Based on these facts it is reasonable that the potential class could easily reach over a hundred members. Over a hundred potential class members makes the class so numerous that joinder of all members would be impracticable.  Accordingly, the Court determines that the numerosity requirement is satisfied.

#### b.   Commonality

Generally, "[a] common nucleus of operative fact[s]" satisfies the commonality requirement under Rule 23(a)(2).  Rosario v.

9

<u>Livaditis</u>, 963 F.2d 1012, 1018 (7th Cir. 1992) (citation omitted). In this case, the common nucleus of operative facts is that defendant has not paid its hourly paid "maintenance" employees for time spent donning and doffing personal protective equipment as well as cleaning and sanitizing themselves. Furthermore, the common issue of law is whether defendant's failure to pay its hourly paid "maintenance" employees for such time violates WMWL. Accordingly, the Court determines that the commonality requirement is satisfied.

### c. Typicality

The typicality requirement under Rule 23(a)(3) "is closely related to the preceding question of commonality." <u>Rosario</u>, at 1018. Both the commonality and typicality requirements "ensure that only those plaintiffs . . . who can advance the same factual and legal arguments may be grouped together as a class." <u>Mace v. Van Ru Credit Corp.</u>, 109 F.3d 338, 341 (7th Cir. 1997). However, under the typicality requirement the focus is on whether the representative plaintiff's claim is based on the same legal theory and arises from the same course of conduct that gives rise to the claims of the other members of the proposed class. <u>Rosario</u>, 963 F.2d at 1018 (<u>citing</u> <u>De La Fuente v. Stokely-Van Camp, Inc.</u>, 713 F.2d 225, 232 (7th Cir. 1983)).

Musch claims that defendant's pay policy and practice of not paying him for time spent donning, doffing, cleaning and sanitizing

violated WMWL because such time was time spent working for which he should have been paid.  This claim is based on the same legal theory (i.e., violation of WMWL) and arises out of the same course of conduct (i.e., defendant's pay policy and practice) as the other potential class members' claims. Accordingly, the Court determines that the typicality requirement is satisfied.

### d.    Adequacy of Representation

There are two parts in determining the adequacy of representation: (1) "'the adequacy of the named plaintiff's counsel[;]'" and (2) "'the adequacy of representation provided in protecting the different, separate, and distinct interest[s]' of the class members." Retired Chi. Police Ass'n v. Chicago, 7 F.3d 584, 598 (7th Cir. 1993) (quoting Sec'y of Labor v. Fitzsimmons, 805 F.2d 682, 697 (7th Cir. 1986)(en banc)). Accordingly, if there are "antagonistic or conflicting claims" among class members then there is not adequate representation.  Rosario, 963 F.2d at 1018 (ciation omitted).

In this case, although Musch has three attorneys listed as his counsel, Larry A. Johnson ("Johnson"), Nola Hitchcock Cross ("Cross") and Richard B. Celler ("Celler"), Celler is set forth as the lead attorney.  Celler belongs to Morgan and Morgan, P.A., which is a law firm that appears capable of providing adequate resources to support this litigation.  Also, Celler appears to have focused his practices on employment law and even more specifically

on wage and hour disputes.   Furthermore, Celler has "litigated thousands of collective/class actions under the FLSA since 1999." (Pl.'s Mot. for Decl. of a Class Action at 13.)   The Court is satisfied that Musch's counsel will provide fair and adequate representation for the interests of the class in this case. Moreover, there are no apparent "antagonistic or conflicting claims" between Musch and potential class members.   Accordingly, the Court determines that the adequacy of representation requirement is satisfied.

### 3.   Rule 23(b)(3)

Federal Rule of Civil Procedure 23(b)(3) sets out two additional requirements for class certification, which are often referred to as the predominance and superiority requirements.   Rule 23(b)(3) also provides a non-exhaustive list of four factors that courts should consider when addressing the predominance and superiority requirements.   See Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 623-24, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).   A court needs to consider

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

12

Fed. R. Civ. P. 23(b)(3).  Furthermore, the predominance and
superiority requirements are meant "to cover cases 'in which a
class action would achieve economies of time, effort, and expense,
and promote . . . uniformity of decision as to persons similarly
situated, without sacrificing procedural fairness or bringing about
other undesirable results.'"  Id. at 615 (alteration in original)
(quoting Fed. R. Civ. P. 23(b)(3) advisory committee's note
(1966)).

      **a.   Predominance**

Under Rule 23(b)(3) a class action may be maintained if "the
court finds that the questions of law or fact common to class
members predominate over any questions affecting only individual
members."  Although similar to the commonality requirement under
23(a)(2), the predominance requirement is more demanding.  Windsor,
521 U.S. at 623-24.  Furthermore, the predominance requirement is
meant to test "whether proposed classes are sufficiently cohesive
to warrant adjudication by representation."  Id. at 623.

In this case, questions of law and fact common to class
members predominate over any questions affecting only individual
members.  The core question of law concerning the WMWL claims,
which is also a question common to class members, is whether time
spent donning and doffing personal protective equipment as well as
cleaning and sanitizing should be considered compensable work time.
If such time is compensable work time, then a question of fact

13

common to class members is whether defendant has paid class members for all their time spent working at defendant's paper mills as required under WMWL.  Also, the class members are challenging defendant's pay policy and practice of not paying employees for time spent donning, doffing, cleaning and sanitizing and whether such a policy is valid will predominate over individual issues. See Blihovde, 219 F.R.D. at 620.  Accordingly, the Court determines that the predominance requirement is satisfied.

      **b.   Superiority**

Rule 23(b)(3) further requires that a court find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  In this case, class members would have very little interest in individually controlling the prosecution of separate actions because the amount of individual recovery is small compared to the amount of time and effort that would go into litigating this action.  Combining class members' individual WMWL claims into a class action aggregates their "'relatively paltry potential [individual] recoveries into something worth someone's . . . labor.'" Windsor, 521 U.S. at 617 (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997)).

Furthermore, there is no other litigation concerning this controversy.  Also, it is desirable to conduct the litigation in the Western District of Wisconsin because defendant's operations

14

are located in this district and the records and other evidence concerning class members' employment with defendant are located in this district. Moreover, the class members' WMWL claims closely mirror the FLSA claims already before this Court. Accordingly, concentrating the litigation of the WMWL claims in this district would promote uniformity of decision as to persons similarly situated.

Finally, any difficulties in managing the WMWL claims as a class action are outweighed by the time, effort and expense conserved by certifying the class action. Although there is a variation in damages among class members, such variation does not preclude class certification. See, e.g., Blihovde, 219 F.R.D. at 621 (citations omitted). Also, commonality of the pertinent facts among class member (i.e., class members were not compensated for time spent donning, doffing, cleaning and sanitizing) and the individual damages being small (i.e., the minutes spent donning, doffing, cleaning and sanitizing each workday) would make addressing each class member's claim as a separate action impracticable. Instead of over a hundred cases each addressing whether defendant's pay policy and practice violated the WMWL, certifying the WMWL claims as a class action would best conserve time, effort and expense by addressing that common issue once. Accordingly, the Court determines that certifying the WMWL claims

as a class action would be the superior method for fairly and efficiently adjudicating the controversy.[2]

### 4.   Rule 23(c)

The proposed class, as stipulated to by the parties, satisfies the implicit class action requirements.  Also, named plaintiff has proven that this action satisfies all the requirements for class certification found under Rule 23(a).  Furthermore, plaintiff's action can be maintained as a class action because it satisfies Rule 23(b)(3).  However, in accordance with Rule 23(c)(4), the class is being certified only in relation to the WMWL claims, not the FLSA claims.  Moreover, the class being certified under Rule 23(b)(3) requires that class members be provided notice in accordance with Rule 23(c)(2)(B) and an opportunity to "opt-out" of this class action.  Accordingly, as required under Rule 23(c)(1)(B):

(1) The certified class is defined as:

---

[2]The Court is aware of concerns about exercising supplemental jurisdiction over state wage law claims brought as a class action along with an FLSA collective action if the class members far out number those who choose to opt-in to the FLSA collective action. See Riddle v. Nat'l Sec. Agency, Inc., No. 05-C-5880, 2007 WL 2746597, at *3, 10 (N.D. Ill. Sept. 13, 2007).  However, the Seventh Circuit has not addressed the controversy concerning how to address dual-filed wage claims, i.e., an action involving FLSA wage claims and state law wage claims.  Furthermore, based on the Rule 23 requirements the circumstances of the current action support granting class certification at this point because it is the superior method to adjudicate the controversy.  Accordingly, if the aforementioned jurisdictional concern becomes an actual problem the Court has the power under Rule 23(c)(C) to alter or amend its decision to grant class certification before final judgment.

16

> All current and former Domtar hourly paid "maintenance" employees who worked in Domtar's Nekoosa and/or Port Edwards, Wisconsin mills since September 19, 2005, and were not paid for time spent shaving as required by Domtar, for time spent donning their work clothes, safety shoes, and safety glasses before the start of work each day, and for time spent doffing their work clothes, safety shoes, and safety glasses and showering at the end of each work day.

(2) The class claims are that defendant violated Wisconsin Minimum Wage Laws by enforcing a pay policy and practice that resulted in not paying class members for all hours worked. <u>See</u> Wis. Stat. § 103.01; Wis. Admin. Code DWD §§ 274.01-.08.

(3) Class counsel for this action shall be Richard Celler of Morgan & Morgan P.A.

## III. Notice

Certifying the FLSA claims as a collective action requires giving notice of the FLSA claims to potential plaintiffs and providing potential plaintiffs with an opportunity to "opt-in" to the FLSA collective action. Also, certifying the WMWL claims as a class action under Rule 23 requires giving notice of the WMWL claims to class members and providing class members with an opportunity to "opt-out" of the class action. Because the FLSA collective action uses an "opt-in" procedure and the Rule 23 class action uses an "opt-out" procedure, two separate notices must be sent out. <u>See generally</u> <u>King v. Gen. Elec. Co.</u>, 960 F.2d 617, 621 (7th Cir. 1992) (discussing the application of the FLSA's

enforcement provisions under 29 U.S.C. § 216 as incorporated into the Age Discrimination and Employment Act).

The drafting of these separate notices must be done carefully because, as one district court has noted

> notice regarding the class action will indicate that members are, by default, opted in unless they affirmatively opt-out, while notice regarding the FLSA collective action will indicate that members are, by default, opted out unless they affirmatively opt-in to the action.

O'Brien v. Encotech Constr. Serv., Inc., 203 F.R.D. 346, 352 (N.D. Ill. 2001). Moreover, the Court is aware that their will inevitably be confusion among potential plaintiff/class members concerning what they need to opt into versus opt out of. See Riddle v. Nat'l Sec. Agency, Inc., No. 05-C-5880, 2007 WL 2746597, at *4 (N.D. Ill. Sept. 13, 2007). However, the harm of such confusion is outweighed by the many other facts, discussed supra, that support adjudicating the WMWL claims as a class action.

The parties are currently in dispute concerning the proper notices to be sent for both the FLSA collective action and Rule 23 class action. However, the parties have informed the Court that they are working to create mutually acceptable notices. Accordingly, the Court requires that mutually acceptable notices or, should the parties be unable to agree, each parties draft of the separate notices, be submitted to the Court by noon on February 6, 2008 and upon receipt the Court will review the notices to

determine whether they are satisfactory and deserving of Court authorization.

ORDER

IT IS ORDERED that plaintiff's motion to conditionally certify plaintiffs' FLSA claims as a collective action is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion to have his Wisconsin Minimum Wage Law claims certified as a class action under Federal Rule of Civil Procedure 23 is GRANTED in accordance with this order.

IT IS FURTHER ORDERED that the parties will submit draft notices, either jointly or separately, by noon on February 6, 2008.


Entered this 30th day of January, 2008.

BY THE COURT:

/s/

_____
JOHN C. SHABAZ
District Judge