IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALAN MUSCH, on behalf of himself
and all others similarly situated,

                                                 OPINION AND ORDER

                Plaintiff,

                                                 07-cv-524-bbc

       v.

DOMTAR INDUSTRIES, INC.,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is a civil action for monetary relief in which plaintiff Alan Musch, on behalf of himself and others similarly situated, contends that defendant Domtar Industries, Inc. violated the Fair Labor Standards Act, 29 U.S.C. §§ 201-209, and Wisconsin labor laws, Wis. Stat. § 103.01 and Wis. Admin. Code §§ DWD 274.01-.08, by not compensating its maintenance employees for all "work" time.  On January 30, 2008, plaintiff's FLSA claims were certified as a collective action under 29 U.S.C. § 216(b) and his state law claims were certified as a class action under Fed. R. Civ. P. 23.  Dkt. #58.  Jurisdiction is present.  28 U.S.C. §§ 1331 and 1367.

      Currently before the court is defendant's motion for summary judgment.  I conclude

that under both the FLSA and Wisconsin labor laws defendant is not required to compensate plaintiffs for time spent donning and doffing work clothes, safety shoes and safety glasses or for time spent showering and shaving at the end of their shifts. Therefore, defendant's motion will be granted.

The following facts are undisputed and drawn from both parties' proposed findings of fact.

## UNDISPUTED FACTS

### A. Parties

Named plaintiff Alan Musch and the other plaintiffs who have opted into Musch's FLSA claims are current or former hourly paid maintenance workers who at any time within the last three years were employed by defendant at its paper mill facilities in Nekoosa or Port Edwards, Wisconsin. Plaintiff Musch also represents the following class with respect to Wisconsin state labor law claims:

> All current and former Domtar hourly paid "maintenance" employees who worked in Domtar's Nekoosa and/or Port Edwards, Wisconsin mills since September 19, 2005, and were not paid for time spent shaving as required by Domtar, for time spent donning their work clothes, safety shoes, and safety glasses before the start of work each day, and for time spent doffing their work clothes, safety shoes, and safety glasses and showering at the end of each work day.

(For efficiency and simplicity, I will refer to named plaintiff, opt-in plaintiffs and class

2

members collectively as plaintiffs.)  Defendant is a company that designs, manufactures, markets and distributes a wide range of fine paper for a variety of consumers.

### B. Plaintiffs' Donning, Doffing, Shaving and Showering

As maintenance workers employed at the Nekoosa and Port Edward paper mills, plaintiffs include various trades, including machinists, millwrights, pipefitters, electricians, welders, mechanics and instrument technicians.  Plaintiffs' regular shift is from 7:00 a.m. to 3:00 p.m., with two paid 15-minute breaks.  When they arrive for work, plaintiffs are free to enter the paper mills from any entrance.  At the start of their shift, plaintiffs are required to be wearing their "uniform," which consists of safety shoes, safety glasses and work clothes, that is, jeans or bibs and a t-shirt.  If plaintiffs are working in certain areas of the Nekoosa mill, they are required to wear hard hats.

Defendant does not require plaintiffs to leave their work clothes, safety shoes and safety glasses at the paper mills.  Plaintiffs are permitted to put on their work clothes, safety shoes and safety glasses at home, in their cars or any other location of their choosing so long as they arrive at the start of their shift ready to work.  At its paper mills, defendant provides multiple locker rooms for plaintiffs' use.  Plaintiffs can choose to use any locker room.  Once they choose a locker room, they are assigned one or more lockers.  Some plaintiffs use two

3

lockers so that they may keep clean clothes in one locker and dirty clothes in the other. Plaintiffs provide their own locks for their lockers.

At the beginning of their shift, plaintiffs meet with their crews and a lead man or supervisor gives them their work assignments for the day.  Defendant compensates plaintiffs beginning at the start of plaintiffs' shift, when they are supposed to be at their crew meeting. After receiving a work assignment, plaintiffs obtain the tools and personal protective equipment they need to complete their assignment.  Plaintiffs are compensated for the time it takes them to obtain the necessary tools and personal protective equipment after their crew meeting.

Plaintiffs have their own hand tools and personal protective equipment, such as hearing protection, gloves and rubber boots.  In accordance with the collective bargaining agreements governing plaintiffs' employment with defendant, plaintiffs receive an annual tool and shoe allowance from defendants.  This allowance has generally been more than $300 a year.  If plaintiffs' work assignment requires tools or personal protective equipment that are not normally required for their trade and that they do not possess, such tools and equipment are provided for them.  Both of defendants' paper mills contain store rooms where plaintiffs can obtain needed personal protective equipment.

At the end of their shifts, plaintiffs are required to clean and put away tools and personal protective equipment and complete their time sheets.  Plaintiffs are expected to

complete those activities within normal shift time, that is, before 3:00 p.m., and are compensated at the normal pay rate for completing those activities. If completion of those activities occur after 3:00 p.m., plaintiffs are paid overtime, that is, time and one-half, so long as defendant's management approves the overtime.

In general, plaintiffs are not paid for time spent changing out of their work clothes or shaving and showering at the paper mills and defendants do not require plaintiffs to change, shave or shower at the paper mills. Plaintiffs are responsible for laundering their dirty work clothes. If they wish, they may use a uniform service to launder their work clothes at their own expense. Alternatively, they may launder their dirty work clothes at their homes. No company policies require plaintiffs to change their work clothes each shift; some plaintiffs wear the same work clothes on more than one day. How often plaintiffs change their work clothes depends on how dirty the clothes get.

Plaintiffs are not required to shower at defendant's paper mills unless their skin is exposed to a hazardous substance while working. If this happens, plaintiffs are expected to wash the affected body part immediately or take a shower. Plaintiffs are compensated for any time spent washing, showering or changing clothes because of exposure to a hazardous substance, even if the time requires overtime pay. Although plaintiffs are not required to shower at defendant's paper mills, many plaintiffs choose to do so after their shift because they are dirty and may have unknowingly been in contact with chemicals despite wearing

5

personal protective gear.

Until January 2006, plaintiffs were required to be clean-shaven while at work in the event they were required to wear a respirator, (they must be clean-shaven to ensure a proper fit between the respirator mask and the skin on their faces).  After January 2006, only certain maintenance employees have been required to be clean-shaven when they report to work, including members of the Hazardous Materials team and pipefitters.  Employees volunteer to be a part of the Hazardous Materials team.  Although defendants do not have a requirement regarding when and where plaintiffs must shave, defendants do require that those plaintiffs that must be clean-shaven be so at the beginning of their normal working hours.  Because plaintiffs on the Hazardous Materials team may be called back at any time to handle a job, those plaintiffs usually shave at the end of their shifts because they may not have time to shave if called back to work.

Each work day, plaintiffs are required to complete a time sheet on which plaintiffs record the number of hours worked at "straight time," "½ time" and "double time." Plaintiffs are not required to punch a time clock and are trusted to keep track of the time they spend on their job assignments.  Because defendant does not have a fixed policy regarding the time increments plaintiffs are required to use when recording time, plaintiffs generally record their time, including overtime, in 15 or 30-minute increments, rounding their time up to the nearest increment.  According to the collective bargaining agreements

6

that govern plaintiffs' employment at the paper mills, defendant pays plaintiffs as follows: (1) all time worked in excess of eight hours in a day at the rate of time and one-half; (2) all time worked in excess of forty hours in a week at the rate of time and one-half; and (3) all time worked on holidays at the rate of double time.

### C. Defendant's Safety Rules

Defendant has published safety rules at both paper mills. Some relevant rules state:

An employee that becomes injured must get first aid at once. No matter how slight the injury, it must be reported to your supervisor, and the mill nurse or paper test lab by the end of the injured employee's shift. A personal injury report needs to be completed.

Employees must use the protective equipment and clothing required for the assigned job. The maintenance staff at defendant's paper mills has developed Job Safety Analyses that describe common job duties, identify potential hazards or accidents associated with each duty and provide the procedures employees are expected to follow and the personal protective equipments they are required to use when performing a duty. There are Job Safety Analyses for plaintiffs' duties. Relevant analyses are made available to plaintiffs on defendant's computer system. The maintenance staff at each of defendant's paper mills also have monthly safety meetings at which they review safety polices and procedures, including training on personal protective equipment.

7

Each paper mill has Material Safety Data Sheets for all the chemicals used in each mill.  These data sheets identify the personal protective equipment an employee should use when working with each chemical.  Plaintiffs have access to these data sheets in paper form or in electronic form through defendant's computer system.  Plaintiffs receive annual training from defendants.  At the training, plaintiffs are advised that they must report any injury or suspected injury to the company nurse and their supervisors.  Plaintiffs also receive annual training on the hazards to which they can be exposed in the paper mills, how to identify those hazards and the personal protective equipment they should use to minimize their exposure to those hazards.

OPINION

A.  Summary Judgment Standard

Under Fed. R. Civ. P. 56, summary judgment is appropriate "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Goldstein v. Fidelity & Guaranty Ins. Underwriters, Inc., 86 F.3d 749, 750 (7th Cir. 1996) (citing Fed. R. Civ. P. 56); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The district judge's function in a summary judgment motion "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  Additionally, "it is the substantive

8

law's identification of which facts are critical and which facts are irrelevant that governs." Id. at 248.  Furthermore, all reasonable inferences from undisputed facts should be drawn in favor of the nonmoving party.  Baron v. City of Highland Park, 195 F.3d 333, 338 (7th Cir. 1999).

However, the nonmoving party cannot simply rest upon the pleadings once the moving party has made a properly supported motion for summary judgment.  Instead the nonmoving party must submit evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  Essentially, it becomes the nonmoving party's burden to demonstrate that there is a genuine issue of material fact, that is, that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.  Moreover, "conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact." Hall v. Bodine Electric Co., 276 F.3d 345, 354 (7th Cir. 2002); see also Patterson v. Chicago Association for Retarded Citizens, 150 F.3d 719, 724 (7th Cir. 1998) ("A plaintiff's speculation is not a sufficient defense to a summary judgment motion.") (internal quotation omitted).

Defendant contends that the undisputed facts establish that defendant has not violated either the FLSA or similar Wisconsin labor laws and that it is entitled to have judgment entered in its favor.  More specifically, defendant contends that it is not required to compensate plaintiffs for time spent donning and doffing work clothes, safety shoes and

safety glasses or for time spent showering and shaving at the end of their shift.

B.  <u>Compensable Work Time and the Preliminary and Postliminary Exception</u>

The purpose behind the FLSA is to make sure that workers can maintain "the minimum standard of living necessary for health, efficiency, and general well-being."  29 U.S.C. § 202(a).  It is a core requirement under the FLSA that "employers must pay their employees a wage for all the 'work' that they do."  <u>Spoerle v. Kraft Foods Global, Inc.</u>, 527 F. Supp. 2d 860, 862 (W.D. Wis. 2007) (citing 29 U.S.C. §§ 206 and 207).  Although the FLSA does not define the term "work," a general rule has arisen from the case law "that an employee must be paid for all time spent in physical or mental exertion, whether burdensome or not, controlled and required by the employer, and pursued necessarily and primarily for the benefit of the employer or his business."  <u>Sehie v. City of Aurora</u>, 432 F.3d 749, 751 (7th Cir. 2005) (citations and internal quotations omitted).  This general rule has been further broadened so that "there need be no exertion at all, and that all hours that the employee is required to give his employer are hours worked, even if they are spent in idleness."  <u>Id.</u> (citing <u>Armour & Co. v. Wantock</u>, 323 U.S. 126, 133 (1944)).

Under Wisconsin's labor laws, an employer "shall as often as monthly pay to every employee engaged in the employer's business . . . all wages earned by the employee to a day not more than 31 days prior to the date of payment."  Wis. Stat. § 109.03(1).  Employees

10

are to be paid for hours worked, which is "all time spent in physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer's business." Wis. Admin. Code § DWD 272.12(1)(a)(1) (internal quotation omitted).

Despite the broad definition of "work," there are exceptions to what time is compensable work time under both the FLSA and Wisconsin labor laws.  Under the FLSA, employers are not required to compensate employees for time spent performing activities that are "preliminary" or "postliminary" to employees' principal activity or activities and "occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."  29 U.S.C. § 254(a)(2).  The preliminary/postliminary exception in § 254, also referred to as the Portal-to-Portal Act of 1947, has been expounded upon in federal regulations; one such pertinent regulation states:

> Other types of activities which may be performed outside the workday and, when performed under the conditions normally present, would be considered "preliminary" or "postliminary" activities, include checking in and out and waiting in line to do so, changing clothes, washing up or showering, and waiting in line to receive pay checks.

29 C.F.R. § 790.7(g).  In determining whether an activity is preliminary or postliminary, the focus of the analysis is whether the activity is an integral and indispensable part of the employee's principal activities and not specifically excluded by the Portal-to-Portal Act.  IBP,

11

Inc. v. Alvarez, 546 U.S. 21, 29-30 (2005) (citing Steiner v. Mitchell, 350 U.S. 247, 256 (1956)).  Ordinarily, "changing clothes and showering under normal conditions" constitute non-compensable preliminary or postliminary activities.  Pirant v. United States Postal Service, 542 F.3d 202, 208 (7th Cir. 2008) (quoting Steiner, 350 U.S. at 249) (footnote omitted).

Under Wisconsin labor laws, an employee's hours worked or his "workday" consists of "the period between the time on any particular workday at which such employee commences their principal activity or activities and the time on any particular workday at which they cease such principal activity or activities."  Wis. Admin. Code § DWD 272.12(1)(a)(2) (internal quotation omitted).  Wisconsin's labor regulations mirror the federal labor regulations regarding the activities considered a part of a principal activity.  Wis. Admin. Code § DWD 272.12(2)(e)(1)(a)-(c); 29 C.F.R. § 790.8(b)-(c).  "Preparatory and concluding activities" are not "principal activities" unless they are an integral and indispensable part of a principal activity.  Wis. Admin. Code § DWD 272.12(2)(e) & (2)(e)(c). For example, "if changing clothes is merely a convenience to the employee and not directly related to [his] principal activities, it would be considered as a "preliminary " or "postliminary" activity rather than a principal part of the activity."  Wis. Admin. Code § DWD 272.12(2)(e)(c).  Therefore, determining whether an activity is "preliminary" or "postliminary" under either the FLSA or Wisconsin labor law will follow the same analysis

12

because of the similar, and in some cases identical language used to describe such activities.

C.  Donning and Doffing Work Clothes, Safety Shoes and Safety Glasses

Defendant contends that plaintiffs' donning and doffing of work clothes, safety shoes and safety glasses before and after their shifts do not constitute compensable "work" time because such time is preliminary and postliminary to plaintiffs' principal activities. Plaintiffs disagree and contend that such donning and doffing are integral and indispensable to their principal activities at defendant's paper mills. To defeat defendant's motion, plaintiffs have the burden of providing evidence that establishes a genuine issue of material fact; plaintiffs have failed to satisfy that burden.

Plaintiffs' principal activities involve the performance of maintenance duties around defendant's paper mills. Although defendant requires maintenance employees, which include plaintiffs, to wear "uniforms" consisting of a t-shirt and jeans or bibs, safety shoes and safety glasses, it is undisputed that neither defendant's rules nor any law requires plaintiffs to don and doff their uniforms at defendant's paper mills. Plaintiffs are free to don and doff at their homes, in their cars or in the locker rooms provided by defendant at its paper mills. When maintenance employees' duties place them in contact with hazardous chemicals, they are required to use additional personal protective equipment and they are compensated for the time spent donning and doffing the additional equipment.

13

In a different but related context, that is, in addressing a different "changing clothes" exception to compensated work time under 29 U.S.C. § 203(o), I noted that "because dressing [at home] is something that everyone must do anyway, it is inconsistent with the meaning of 'work.'" Spoerle, 527 F. Supp. 2d at 868. The "uniform" merely takes the place of the clothes plaintiffs wear before and after work. Plaintiffs' donning and doffing are inconsistent with the meaning of "work" because changing into such a basic "uniform" is akin to dressing at home and because plaintiffs have failed to show that such donning and doffing is done necessarily and primarily for defendant's benefit. Compare Hoyt v. Ellsworth Cooperative Creamery, No. 07-cv-386-jcs, 2008 WL 2717583, at *3 (W.D. Wis. Jan. 10, 2008) (J. Shabaz) (donning and doffing hairnets done necessarily and primarily for employer's benefit because hairnets worn in satisfaction of employer's customers' demands as well as state law).

Even if plaintiffs' donning and doffing of their "uniforms" are considered "work," such activities are not "integral and indispensable" to plaintiffs' maintenance duties. Defendant contends, and I agree, that donning and doffing a t-shirt and jeans or bibs, safety shoes and safety glasses is merely "changing clothes . . . under normal conditions," especially in light of the fact that such donning and doffing can be done outside the workplace. Pirant, 542 F.3d at 208 (quotation omitted). The undisputed facts establish that a plaintiff's decision to don and doff at work is a decision of convenience, that is, plaintiffs change

14

clothes at work because their work clothes are dirty.

I have held previously that donning and doffing "safety equipment" cannot be equated with changing clothes under normal conditions, Spoerle, 527 F. Supp. 2d at 865, but I did not specifically address what clothing or items constitute "safety equipment." Although what clothing items and equipment fall under the category of "safety equipment" may vary based on the facts of each case, I conclude in this case that plaintiffs' basic "uniform" falls outside the category. Moreover, the Court of Appeals for the Seventh Circuit's recent opinion in Pirant, 542 F.3d at 208-09, supports the conclusion that donning and doffing nonunique safety clothing, like plaintiffs' uniform in this case, is merely preliminary and postliminary activity, as opposed to donning and doffing "extensive and unique protective equipment" that would be integral and indispensable to a principal activity. Therefore, plaintiffs' donning and doffing of t-shirts, jeans or bibs, safety shoes and safety glasses are preliminary and postliminary activities.

Nonetheless, plaintiffs contend that donning and doffing their uniforms are "integral and indispensable" to their maintenance duties because the hazardous chemicals they may unknowingly come in contact with during work prevent them from changing in and out of their uniforms anywhere but at work. However, plaintiffs' contention is not supported by any evidence. They merely speculate that all types of chemicals, including hazardous chemicals, could be on their work clothes on any given day. See, e.g., Matthews Dep., dkt.

15

#89, at 94 ("Q: At the end of the workday, do you know all the substances that are on your work clothing?  A: No."); Musch Dep., dkt. #94, at 212 ("Q: What's on your work uniform when you get out of that pipe chase? . . .  A: I have no idea what's in there.  Just -- I have no idea.").  Speculation is not a sufficient defense to a summary judgment motion.  Patterson, 150 F.3d at 724.  Plaintiffs' preference for changing clothes at work because there may be hazardous chemicals on their clothes is not the same as having to change clothes at work because in fact there are chemicals on their clothes that would make it unsafe to change at home.  Without evidence establishing that it is unsafe to change work clothes outside work, plaintiffs cannot satisfy their burden on summary judgment.

Further, the record evidence refutes plaintiffs' contention.  It is undisputed that some plaintiffs bring their work clothes home to launder them and that plaintiffs sometimes wear the same work clothes for more than one day.  It is not credible that it would be unsafe for plaintiffs to wear work clothes home but it would be safe to wash those clothes at home or to wear the same clothes multiple days without washing them.   Also, there is no company safety rule or state or federal law requiring plaintiffs to change work clothes at work because it would be unsafe to change them at home.  Instead, under defendant's safety rules, plaintiffs are required to wear proper personal protective equipment over their work clothes when working with hazardous chemicals to avoid getting those chemicals on their work clothes and skin.  If plaintiffs' work clothes or skin are exposed to hazardous chemicals,

16

defendant has a safety policy requiring them to shower and change immediately and plaintiffs are compensated for donning and doffing such personal protective equipment and for any clothes changing after exposure to hazardous chemicals. Such facts support the conclusion that it is safe for plaintiffs to change in and out of their work clothes outside defendant's paper mills.

I conclude that plaintiffs have failed to raise any genuine issue of material fact to put into dispute defendant's contention that plaintiffs' donning and doffing of work clothes, safety shoes and safety goggles are preliminary and postliminary activities that are not compensable work time.

### D.  Showering and Shaving

Plaintiffs' time spent showering and shaving at the end of their shift is non-compensable time spent on postliminary activities. As with changing clothes, showering under normal conditions is generally not compensable work time. Pirant, 542 F.3d at 208 (citation omitted). I see no reason to treat shaving under normal conditions any differently from showering under normal conditions. Showering and shaving are activities that employees may perform regardless of their job. See, e.g., Spoerle, 527 F. Supp. 2d at 868 (addressing the "washing" exception under 29 U.S.C. § 203(o)). Plaintiffs contend that their showering and shaving are indispensable to their health and safety and not done under

17

normal conditions because they must shower at work after their shifts to wash any hazardous chemicals off their skin and they must shave at work after their shifts to be clean shaven in case they get called back to work.

Again, the evidence in the record does not support plaintiffs' contention. Plaintiffs' contention that they must shower at work at the end of their shift each day is based on their speculation that they may have hazardous chemicals on their skin. This contention fails for the same reason plaintiffs' contention regarding donning and doffing "uniforms" fails, that is, it is based on speculation and not on evidence in the record. According to deposition testimony proffered by plaintiffs, they can only speculate as to what chemicals may be on their skin at the end of a shift. See, e.g., Musch Dep., dkt. #94, at 206 ("I've got to get that stuff off me. I don't know what's on me."). Again, the facts in the record support the conclusion that plaintiffs' decision to shower at work is a convenience and not a necessity. See, e.g., Matthews Dep., dkt. #89, at 94 ("Q: Okay. Why then do you shower at Domtar at the end of the day? A: Well, it's because I don't want to put on dirty--- being dirty, putting on good clothes. Q: Okay. A: So it's convenient that I can wash up before I put on the good clothes and get home."). Moreover, it is undisputed that defendant has a policy that its maintenance employees must shower immediately if their skin is exposed to any hazardous chemicals and employees are paid for any time spent changing and showering in response to such an exposure. Therefore, plaintiffs' speculation that they may be exposed

18

unknowingly to hazardous chemicals fails to raise a genuine issue of material fact to put into dispute defendant's contention that plaintiffs' showering is done under normal conditions and a decision made out of convenience and not necessity.

Regarding shaving, plaintiffs were required to be clean-shaven while at work in the event they were required to wear a respirator, to ensure a proper fit between the respirator mask and the skin on their faces.  Defendant does not require plaintiffs to shave at work or at the end of their shift; it requires only that plaintiffs be clean-shaven at the beginning of normal working hours.  Plaintiffs on defendant's Hazardous Materials team may be called back to work after their shifts have ended.  Because they may be called back to work, plaintiffs' on the Hazardous Materials team usually shave at the end of their shifts in case they do not have time to shave before returning to work.

Plaintiffs contend that because defendant requires them to be clean-shaven for safety reasons, shaving is an integral and indispensable part of their maintenance duties.  Plaintiffs are mistaken.  The shaving requirement's relationship to safety does not automatically make the activity integral and indispensable to a principal activity.  Pirant, 542 F.3d at 208-09 (changing into required safety clothing was akin to changing clothes or showering under normal conditions, which is a non-compensable preliminary and postliminary activity). Plaintiffs are free to shave anywhere and anytime, so long as they are clean-shaven for work. Like showering or dressing, shaving is an activity that employees may perform regardless of

19

their job or of any safety requirements.  It would be nonsensical for an employee's time spent shaving because of an employer's purely aesthetic requirement to be non-compensable work time, which it most certainly would be, but at the same time became compensable because the employer's requirement was related to safety.  As long as the activity of shaving is akin to changing clothes or showering under normal conditions, such an activity is not compensable.  Plaintiffs have failed to produce evidence demonstrating otherwise.

I conclude that the time plaintiffs spent showering and shaving at the end of each shift is time spent in a non-compensable postliminary activity.  Plaintiffs have failed to provide any evidence from which a reasonable jury could find otherwise.


ORDER

IT IS ORDERED that:

1.  Defendant Domtar Industries, Inc.'s motion for summary judgment, dkt. #83, is GRANTED.

2.  The clerk of court is directed to enter judgment in favor of defendant Domtar against named plaintiff Alan Musch and other plaintiffs who opted into Musch's FLSA claims and, with respect to Musch's Wisconsin state labor law claims and in accordance with Fed. R. Civ. P. 23(c)(3)(B), against the following Fed. R. Civ. P. 23(b)(3) certified class:

All current and former Domtar hourly paid "maintenance" employees who worked

20

in Domtar's Nekoosa and/or Port Edwards, Wisconsin mills since September 19, 2005, and were not paid for time spent shaving as required by Domtar, for time spent donning their work clothes, safety shoes, and safety glasses before the start of work each day, and for time spent doffing their work clothes, safety shoes, and safety glasses and showering at the end of each work day.

.

Entered this 23rd day of October, 2008.

BY THE COURT:


/s/
_____
BARBARA B. CRABB
District Judge